May it please the court, Chief Judge Riley, Judge Mead, Judge Shepard, Mr. Franklin. My name is Richard McWilliams. I'm an assistant federal public defender here in Omaha. And I represented the appellant in this case, Michael Smith, who was convicted after the district court below erroneously denied him an available mistake of fact defense, which is created unambiguously by the statute under which he was convicted. If you do not think that you can hit something, you are not knowingly aiming at it. If there is nothing else that I say here, that is the most important. That is the crux of the defense argument. Judge Girard below disagreed with that statement. And as a result, you know, am I aiming at you? I don't know what you're aiming at. What you intend to aim at, Your Honor. But I'm not, I can't hit you, but I'm pointing my finger at you. Isn't that aiming my finger at you? Well, first of all, I think that what Your Honor is doing is using the incorrect definition of aim. You're using aim as an intransitive verb because there's, I guess, I guess your finger could be the direct object here. But your finger doesn't project anything. So if I, if I aim to please the court, that's the intransitive aim. And Judge Girard below made a similar error in that when he defined aim, he used the intransitive aim, which is, as the court points out, basically synonymous with pointing in the direction of. But that's not the way Congress uses the word aim in Section 39A. It uses the transitive version of aim. What's the definition of a transitive verb? Well, I'm glad you asked, Your Honor, because I wrote it down word for word. A transitive verb has two components. It's an action verb with a doable activity. But then secondly, it must also have a direct object. Simply means that you must have an object for the verb that you use. That's a transitive verb, isn't it? Yes, Your Honor. So when I. Is there an object here? Either. In the example I gave, I said I'm aiming at you. Aim, yeah. He just used the transitive because you're the object of his aim. But he didn't know. He's not a very good aimer. I probably would have missed. He's pretty sure that he couldn't hit you. No, no. To put it bluntly, Your Honor, no. He's aiming. At most, he's aiming his finger. I suppose if Chiefs of Dry League said I'm aiming my finger, then the finger would be the transitive, the direct object of that verb. At me is part of a prepositional phrase. For example, if I aim to please the court, the court is indeed a noun, but it's not the direct object of the sentence. In the statute at issue, Congress says whoever knowingly aims the beam of a laser at an aircraft. But see, you're just using, that's what it says. You try to distinguish it with aiming at you, but the statute says aiming at an aircraft. The object is the object of the prepositional phrase at an airplane. Even if we disagree over what the direct object is, we can all agree that Congress is using aim as a transitive verb. And Judge Gerrard defined the intransitive aim and as a result of that determined that there was no mistake of fact defense. How did Judge Gerrard do that? What did he, what did he, how did he define this use? He took the bench and read, he specified which dictionary he was using and said I've defined this from Webster's New Third Dictionary. And he read the very first definition listed under aim. But in that dictionary, the first definition listed says right before it, and this is in the addendum at 14, it says VI, which means verb intransitive. You've got to go down about 14 lines to see VT, which means verb transitive, which is the definition that Congress intended to be used and which is the proper transitive verb definition of aim. That's not the definition that Judge Gerrard used. And if he had used that definition, he would see that with that definition of aim, there's a corresponding requisite requirement that there be some sort of intent to hit the object that you are aiming at. Where do you read that in the statute? Whoever knowingly aims the beam of a laser pointer and he has to know that it's a, he's knowingly aiming it. And at an air, you have to know that it's an aircraft or the flight path of an aircraft. And that's what we had here straight away, wasn't it? He was the helicopter, the 700, 707 or 737 passenger plane. Well, the 737 passenger plane was not part of the evidence. The helicopter was. And I know there was certainly evidence that Mr. Smith, though he may have been pointing, there may have been evidence that he was pointing the laser beam in the direction of an aircraft. There was evidence that he may have had a mistake of fact as to whether or not the beam could reach the aircraft. What difference did it make? He was aiming it at it? He was pointing it in the direction of it. Yeah, aiming his laser pointer at it. Aiming and pointing, Your Honor, are not synonyms. And I believe that you use it. Pardon? I understand. And so I believe that there may have been evidence that he was pointing it in the direction of. I do not believe that there was evidence that he was aiming. There was certainly enough evidence that we should have been able to receive a mistake of fact instruction to the jury, suggesting if you believe or if there is evidence that he did not believe that the beam could reach the aircraft, that he is not knowingly aiming at it. It's insufficient that you find that he was pointing it. You have to find evidence that he was knowingly aiming. And when you use the phrase knowingly aiming at, there are two requisite facts that you must have in your head when you're doing the action. One is that you are doing something that can reach the object. And secondly, you have to know that the object is an aircraft. Those are the two facts that I think must form in the brain of a defendant before you can convict them of knowingly aiming the beam of a laser at an aircraft. Why is that that you have to know that you can hit it? Because I believe that's what the proper definition of aim demands. The intransitive aim doesn't require – there's no direct object. And that's the definition that Judge Girard used. Wouldn't you have to say knowingly aims the beam of a laser pointer at an aircraft for the purpose of hitting it? You have to add that. But that's not in the federal statute, is it? I think Congress could have worded it that way. But when Congress puts the word knowingly in front of the word aim, it being a predominantly lawyer's body would have – Well, I think the distinction is you can have a laser and a helicopter's flying over. And you just – kids in the back yard, they're waving around. And you could hit the helicopter, but they're not knowingly aiming at it. They're just playing around with a laser. But when somebody is actually trying to aim you to that, defining it by the same word doesn't help any. I think that would – That's the knowing part. I'm aiming at that. And the object, if I remember my Latin and grammar, is the object is the beam of the laser. You're aiming the beam of the laser at some object. In this case, it's an aircraft. I think that would reduce – that would make the word knowingly in the statute then redundant. The use of the word aim suggests some sort of intentional behavior and would, I think, prevent a conviction if somebody was just waving it around willy-nilly. Congress's use of the term aims at, the transitive verb aims at, would prevent wrongful convictions for people who are just waving a laser around. But then Congress takes one step beyond that and adds the word knowingly, not in front of the word aircraft but in front of the word aims at. So what's the difference between just aiming the beam of a laser and knowingly aim the beam of a laser? And I believe that the construction of those two words put together, if we are not ruling one of them redundant within that construction, suggests that – Congress uses the word aim to prevent people from being convicted just for waving a laser around. They add the word knowingly to suggest that if you have in your mind mistaken facts about the reach of the laser or the laser's capabilities, that that could provide a mistake of fact defense to – and congressional intent and the subject matter, aren't the stakes here pretty high to have this turn on a mistake of fact as to the reach or the capability of the laser? I mean you're talking about potentially bringing down a commercial passenger jet and then simply to say if the perpetrator was, oh I was mistaken as to the reach of the laser. That seems, there's a disconnect there to be that I find it difficult to overcome and maybe you could alleviate my concerns there. Well, obviously in many criminal cases, the stakes are high. Congress certainly contemplated all of these possibilities and we have, by looking back at the legislative history of Section 39A, we have some insight as to what the drafters of this legislation intended. And they provide a spectrum of behavior that they intend to criminalize from people who are pranksters all the way up to terrorists. One of the proponents of the bill, Representative Jackson Lee, even provides a kind of a detailed behind the scenes look at what her initial concerns were about – she was concerned that people might be prosecuted who have like low beam, low power lasers that might not reach planes, excuse me, planes or aircraft. She goes on to say, however, that in her discussion with the sponsors that her concerns were alleviated because it seems that the legislation was being drafted or was going to be geared towards people who are trying to strike the plane. Now, I obviously understand the court's concerns. I think the stakes are no less high for Congress drafting Section 39A than they were when Congress drafted Section 2422. As we saw in the Brugier case, certainly for a potential victim of that statute, the stakes are, I would say, comparably high. But we have to assume that when Congress inserts the word knowingly in a statute, it does that for good reason. Justice Scalia tells us that we don't look at the legislative history unless the statute is ambiguous. I don't see much ambiguous about this. But let me give you another hypothetical. I think that many firearms nowadays have laser sights. It's the same principle. I grew up in the Nebraska Sandhills, and we used to chase coyotes once in a while. So if I had a rifle with a laser sight standing on a hill, and I was aiming at the coyote with my laser sight, and an aircraft flew behind it, and when I pressed the trigger, I missed the coyote and hit the aircraft, I wouldn't have knowingly, that's where knowingly would fit into this statute. And you could find that without going to all of the legislative history. And I think that this is a very interesting exercise in intransitive and intransitive verbs. And we deal with that in our opinions all the time to make sure that what we say in opinion is what we mean to say. But I don't read an intent to hit it as in this statute. Your Honor, I think first of all, in your hypothetical with the coyote, or the coyote if I was in South Dakota, the word knowingly doesn't come into play. I think in that hypothetical, Your Honor never aimed at the airplane to begin with. That the airplane flew behind, you don't need the word knowingly. I'm pointing a laser, and I hit an airplane, but I didn't knowingly point the laser at the airplane, so the statute doesn't apply to me. Which is why I think they use the word aim instead of the word points at. I see them in my rebuttal time. But then secondly, I agree with Your Honor about not needing to go past the construction of the statute. One area that Mr. Franklin and I agree on is that I think if Judge Girard, I think that you don't need to go past the construction of the statute. And then if Judge Girard had used the proper definition of the word aim, then the outcome would be much different, and that provides a mistake of fact defense. Okay, thank you Mr. McWilliams. Mr. Franklin, good morning again. Greetings and salutations again, Your Honor. May it please the court, Mr. McWilliams. And Mr. McWilliams is correct. We do both agree that this case is simply about the propriety of the statutory interpretation by Judge Girard. And the way he comes down on that really resolves every other sub-issue that has been raised by the defendant in this case. I want to start out by saying that Judge Beam, I think that your example of aiming at a coyote and maybe inadvertently striking an aircraft that would be in the backdrop is exactly what Congress had in mind in placing the word knowing in the statute. They were trying to avoid people inadvertently. Well, but in Judge Beam's example, he was not aiming, leaving the word knowingly out. He was not aiming at an aircraft. He was aiming at a coyote. I understand that. And Mr. McWilliams' point is that knowingly had to come in there for some reason. So what is the reason of knowingly? Well, I think I understand what you're saying. And I think what Judge Beam was suggesting was that if he's aiming at a coyote and inadvertently strikes the beam of that laser with an aircraft behind it, that that conduct wouldn't be captured by the statute because it's not knowing conduct. No, because he was not aiming at an aircraft. Right. Exactly. Exactly. Exactly. So the word knowingly is superfluous in that example. But anyway, go on. I mean, there's a lot of discussion about the propriety and the appropriate use of aiming and knowing. Let me give you another hunting example. Okay. Shotguns can only usually shoot or kill a bird at about 40 yards. I used to hunt. And if you were at the end of the field blocking. 50 or 55 with a bow load. If you're blocking at the end of the field and somebody, the bird gets up and swings at it, and they may aim at you and fire. But they certainly didn't intend to hit you because they figure you're out 7,500 yards away. So they aimed at, they're actually aiming at the bird again. But again, I guess the point, I guess, is trying to define the word aim. Knowingly. Yeah. And they did not, neither, I guess you'd have to have a situation where they actually aimed at you at the end of the field purposely, knowingly aimed at you, the defense argument. But no, they couldn't hit you because you were 100 yards away. And the defense would say, well, then you didn't violate any statute that prohibits knowingly aiming a gun at somebody because they knew you couldn't hit them that far. That's a pretty poor example. No, it's not, Your Honor. It's a good example. And I think Mr. McWilliams would suggest that it's a good example also, because I think it's the exact same example that he cited in his brief when he referenced the golfer who's on the tee box or on the golf course and ends up thinking that he or she is too far away to be able to get the ball on the green, hits the ball perfectly, the ball carries way beyond what the golfer thought the ball would carry, and it ends up either striking or almost striking someone that's on the green. Well, that golfer, and in your situation, you're doing the aiming. You don't think that you're going to get to the point where there is, I won't say a target or an object, but I guess for lack of a better word, that's what I'll call it. But my response to that, though, Judge, and it seems like everyone is overlooking this very simple point. The statute has two objects in terms of what is being aimed at. It says it's a violation of law to aim a laser at aircraft or the flight path of aircraft. So it is not important whether or not a person is intending to make contact with the laser with the aircraft because by the literal reading of the statute, you can agree that you're not intending to make contact with the aircraft by use of a laser and still violate the statute because you do what it is Mr. Smith said he was doing, which was even if you take him at his word, I'm aiming at aircraft, the path of aircraft, but I didn't think it would get there. That's an admission of guilt right there. That's what he told the deputy sheriff when the deputy sheriff walks up on him and he sees him in the backyard holding up the laser directly at the Able 1 aircraft, at the helicopter. So he admitted, and you asked the question, Judge Bean, about the helicopter, the 737. What Mr. Smith admitted to when the sheriff talked to him, he says the sheriff sees him aiming the pointer at the helicopter, and Smith says, yes, I was aiming at aircraft. He didn't specify whether he was aiming at the helicopter or he was aiming at the 737. He just simply said I was aiming at aircraft, but I didn't think I could reach him. I didn't think I could reach him. Well, the fact that he thinks that he can't reach it, which is an incredible statement given what the evidence was in the case, when the witnesses are testifying, the helicopter pilots are testifying, that as soon as they get close enough where their infrared can pick up a person, the laser goes off. And then when they back out and they do a pendulum and the laser is followed back and forth, the laser is just right on the helicopter, right on the helicopter until the sheriff gets there. So it's an incredible preposterous position to take anyway that he didn't think that it would hit the aircraft because we know based on the pilot testifying that it was cat and mouse with the laser going on and off and making contact with that laser. But giving him credit for saying he didn't think that it would get there, it simply does not matter under the statute because the statute criminalizes conduct that doesn't involve striking the aircraft, even under Mr. McWilliams' theory because the statute says or the flight path of aircraft. So, your honors, I think that Judge Girard had it exactly right. I agree that the statute is clear and unambiguous and it was unnecessary to go into looking behind the statute to determine what Congress' intent was. But to the extent that Judge Girard did that, I think that he did it correctly. He referenced the fact that there was a previous statute that prosecutors sometimes would use to go after this kind of conduct, but there had been a hue and cry because it had been determined to be inadequate and Congress' objective in passing this statute, and I believe this was the first time in the history of this country that this particular statute was used in a criminal jury trial. The statute was only about a year or two years old at the time that we tried this case. So, Congress, what they wanted to do was to make it safer and to criminalize laser beams not being a problem for pilots and the exception to that would be the situation where someone is shooting a cow and the laser happens to strike some part of an aircraft in the backdrop where that wasn't what the intention was. That's the reason why the knowing language is in there, Judge, is what I would suggest to you. That's what Judge Girard, that was his interpretation. I think he had it right, and if you don't have any questions for me, I think I've advanced my position and submitted it on the board. I have one more bit of information. Yes, sir. It's a practice to hunt coyotes in the Nebraska Sandhills from an aircraft, from a light aircraft. So, my hypothetical is perfectly probable under certain circumstances. Well, I'm not a hunter, Your Honor. I'm not objecting to what you said. I was just informing you that if you wondered where the airplane came into the picture, it's frequently done. When I'm on the ground, I'm aiming at a coyote. An airplane that's also hunting coyotes in the area may fly by. Well, if I knowingly am aiming at the coyote, I'm not knowingly aiming at the aircraft, and so I'm not prosecutable under the statute. Absolutely, Your Honor. Here's the problem. If he's got his laser on and he pulls his rifle into the helicopter, the airplane, and it's shining into the airplane, he's violated the statute. No, I didn't knowingly aim at it. Well, I think that there would need to be evidence from one of Judge Beam's hunting partners that says, you know, Judge, you know that your beam is illuminating a part of the aircraft behind that coyote, and he says, I don't care. And he fires away. Then you've got a problem. I hate those airplanes coming around and scaring my coyotes. Okay, thank you. Thank you, Officer. Mr. McWilliams, I don't mean to make light of this for Mr. Smith at all. No, I understand. Somehow we got in some interesting stories. Absolutely. To be very clear, Mr. Smith, when arrested, never said he was aiming at the aircraft or the flight path. He said, quote, I was pointing it at things I did not think I could reach. And that is the very reason why we have Congress inserted the word knowingly before the word aims to prevent the ensnarement of morally innocent actors from being convicted under the statute. If you use aims at as a synonym for points at, then you ensnare people who are not trying to harm aircraft. Before the district court, I used the example of the difference between pointing a BB gun at Neptune and aiming. Well, but I guess the question is, do you think the statute requires that you're intending to harm? Because I think what Congress is doing is saying whether you intend to harm the aircraft or not, we don't want people shining lasers at them. Because with no intent to harm, they can do serious harm. I think the insertion of the word knowingly and the use of the word aims at suggests differently. While certainly Congress does not want lasers hitting planes, it also doesn't want to have people who are morally innocent actors convicted of felonies. What's the testimony that he illuminated at least one helicopter? The testimony was he illuminated the Omaha police helicopter. Now, why isn't that some evidence of an intent to illuminate aircraft? That was the conduct that he was convicted of, Your Honor. That was the aircraft that he was convicted of illuminating. When he was arrested, he said the helicopter pilot testified that they never were struck within a one to two mile radius of his position. And when he was arrested by the deputy and has the handcuffs on, he says, I was pointing at an aircraft I did not think I could reach. I didn't know the laser could go that far. That should be enough to give me an instruction on a mistake of fact, I would think. Okay, thank you, Mr. Williams. Thank you, Your Honor. Thank you both for your arguments. Very interesting case, and both did a very good job. Thank you, Your Honor. So thank you.